IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HERBERT W. BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-0740-CV-W-NKL-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Herbert W. Bradley's ("Bradley") Motion for Summary Judgment [Doc. # 12]. Bradley seeks judicial review of the Commissioner's denial of his requests for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record, the Court denies Bradley's Motion and affirms the ALJ's decision.

**I.      Factual Background**

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive. Portions of the Defendant's brief are adopted without quotation designated.

1

Bradley filed for SSI benefits on December 6, 2002, alleging that he became disabled on November 14, 2002 due to HIV and bilateral shoulder and leg pain. (Tr. 55-60.) He had lost his job a month earlier after testing positive for drugs and was forced into a treatment program. (Tr. 185-186.) Medical records show that Bradley learned of his HIV+ status on November 27, 2002, at the Swope Parkway Health Center. Although it appears that he began taking a regiment of drugs to treat the HIV some months later, there is a dearth of treatment notes in the record.

About three weeks after learning about his HIV status, Bradley saw Brian Ipsen, M.D., for complaints of shoulder pain that made it difficult to work. Bradley told Ipsen he had had surgery on both shoulders in the past and was not interested in further surgical options. He wanted to discuss pain management and disability benefits. (Tr. 97-98.) X-rays reveals the previous surgeries and scar tissue forming around some of the implanted screws. Ipsen's impression was bilateral shoulder pain, left greater than right. The left shoulder was more unstable and the right had more impingement pain. Ipsen recommended physical therapy, medication, and a recheck in 12 weeks. (Tr. 98.) He found no specific limitations on Bradley's activities other than that he had moderate degenerative changes in both shoulders which could cause pain and make it difficult for him to perform manual labor. (Tr. 98.) Other than this visit, there is an absence of medical records detailing further treatment for his shoulder pain

Bradley tested positive for marijuana, cocaine, and opiates on April 21, 2003, and was subsequently incarcerated for cocaine possession from May to August 2003. When

2

he was released from prison, he went to see Dr. Dembinski, who had been managing Bradley's HIV treatment. Dembinski sent a letter to Bradley's attorney on October 8, 2003, following that visit in which he noted that Bradley's HIV drug regimen "seems to be working (the virus is suppressed and the immune system is functioning)."[2] He also stated that he believed the drugs may be contributing to Bradley's aches and pains, and that his fatigue was likely due to depression.

On October 14, 2003, Bradley was seen by James True, M.D., of the Swope Parkway Health Center. (Tr. 157.) Bradley informed Dr. True that he had been incarcerated for drugs but was now clean and wanted nothing more to do with them. He stated that he was depressed due to troubles in his life and his situation rather than anything "chemical in his head." (Tr. 157.) He had not considered suicide, but indicated if his HIV got worse and he was very sick and dying he would consider it. (Tr. 157.) He had been given Elavil in prison for his depression but it reacted badly to his HIV medications. True's Mental Status Exam found Bradley to be a "very pleasant gentleman, kind, well-spoken and well-groomed. He presents his speech in a goal-directed forward-looking manner without psychotic material such as delusions and there is no psychotic process such as blocking. The patient's eye contact is estimated at 90%. His affect and mood are mildly depressed." Dr. True placed Bradley on Trazadone for depression. At a follow up visit with Dr. True on November 25, Bradley reported that he was "doing pretty

---

[2]Blood work on November 3, 2003 further revealed that Bradley's HIV-1 RNA level had dropped from 58,590 copies/ml in November 2002 to 55 copies/ml (Tr. 158).

3

well" and denied any suicidal ideation.

Bradley was again incarcerated for cocaine possession from March to June 2004. There are no further medical records in the Transcript between his release and the hearing before the ALJ on December 9, 2004. During the hearing, Bradley testified that he last worked as a store clerk at the Fire Academy. (Tr. 185.) He issued equipment to firefighters which required him to lift up to 100 pounds at a time. (Tr. 186.) He was fired after he was charged with drug possession. (Tr. 186.) Bradley testified that he suffered from severe diarrhea as often as three times daily and had frequent thigh pain as a side-effect of his medication. (Tr. 188.) Plaintiff testified that he had daily crying spells and thought about suicide "just about every day" (Tr. 202), that he had daily headaches requiring him to lie down for 30 minutes at a time (Tr. 194), that an eye doctor had told him he had a crack in his eyeball that might pop open (Tr. 199), and numerous other ailments for which he has evidently never sought treatment.

Dr. Selbert Chernoff testified at the hearing as a medical expert, explaining that Bradley's HIV had responded so well to drug treatment that he found it "hard to imagine that [Bradley] has symptoms from HIV at this point." (Tr. 212.) Chernoff also noted that Bradley had Hepatitis C and but that the most common treatment for the disease was not advised in Bradley's case because it would be too debilitating for someone with HIV. He also speculated that Bradley's diarrhea was likely related to the HIV rather that the HIV medications because it was common in people with HIV to be frequently susceptible to opportunistic infections that cause diarrhea. (Tr. 212.) Dr. Chernoff did state that

4

Bradley's "depression is without question," noting a GAF of 48 from a November 2003 psych exam, but gave no testimony as to what if any limitations his depression would impose. (Tr. 213.)

Marianne K. Lumpe testified as a vocational expert that Bradley could not go back to his past relevant work but that there were other jobs in the national economy that he could perform, even with mild depression. She testified that if he needed restroom breaks for 20 minutes or more three times in an eight hour day and two breaks of an hour or more twice a day, that he could perform no jobs. She also testified that if he had daily crying spells and suicidal ideation one third of each workday, that he could perform no jobs.

## II. Discussion

In order to establish entitlement to SSI benefits, a plaintiff must show that he is unable to perform any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(A). Bradley has not met this burden. The ALJ determined that Bradley had the severe impairments of bilateral shoulder impairments, hepatitis C, back pain, depression, and HIV, but that he did not have any impairment that met or equaled the criteria listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. (Tr. 28.) The ALJ determined that Bradley's subjective complaints were not fully credible. (Tr. 28.) The ALJ found that Bradley retained the residual functional capacity (RFC) to lift 20 pounds occasionally and 10

5

pounds frequently close to the body from the waist to chest level; and stand, walk, and sit for up to 45 minutes at a time and 6 hours total each in an 8-hour workday. (Tr. 28.) Bradley could not be exposed to extremes of cold or wetness, engage in arms length reaching, overhead work, or food handling, and could only occasionally carry out very short and simple instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public. (Tr. 28.) Bradley could not perform his past relevant work. (Tr. 28.) However, after obtaining testimony from a vocational expert, the ALJ determined that Bradley could perform a number of jobs such as duplicating machine operator, microfilm operator/mounter, and hand packager, which exist in significant numbers in the national economy. (Tr. 27.) Thus, the ALJ determined that Plaintiff was not disabled. (Tr. 28.)

Bradley argues that the ALJ incorrectly determined that he did not meet or equal Listing 14.08. *See* Pl.'s Br. at 16-20. Bradley specifically refers to the Listing 14.08N which directs a finding of disability if the following criteria are met or equaled:

> N. Repeated (as defined in 14.00D8) manifestations of HIV infection (including those listed in 14.08A-M, but without the requisite findings, e.g., carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08J, or other manifestations, e.g., oral hairy leukoplakia, myositis) resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at the marked level (as defined in 14.00D8):
>
>     1. Restriction of activities of daily living; or
>     2. Difficulties in maintaining social functioning; or
>     3. Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

6

20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.08N (emphasis added).  In order for a claimant to show that his impairment matches a listing, the impairment must meet all specified medical criteria.  *See Deckard v. Apfel,* 213 F.3d 996, 997 (8th Cir. 2000)(citing *Marciniak v. Shalala*, 49 F.3d 1350 (8th Cir. 1995)).  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  *Caviness v. Apfel*, 4 F.Supp.2d 813, 818 (S.D.Ind. 1998).

    As an initial matter, Bradley correctly observes that the ALJ did not specifically address Listing 14.08.  *See* Pl.'s Br. at 19.  The Eighth Circuit has stated that "[a]lthough it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion."  *Pepper o/b/o Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003).  As Bradley concedes, the ALJ considered the criteria provided under Listing 12.04, including daily activities; concentration, persistence, and pace; and social functioning.  (Tr. 23.)  These are the same areas of functioning which are considered under Listing 14.08N.  (Tr. 23.)  The ALJ's explicit consideration of the same factors required under Listing 14.08 makes his failure to specifically discuss the Listing harmless error.  The Eight Circuit has held that far less discussion of a specific listing was not error.  *See e.g. Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) ("[T]he ALJ did consider evidence of a listed impairment and concluded that there was 'no showing on this record that the claimant's impairments, whether considered singly or in combination, meet or are equivalent to any of the listed impairments.' Administrative R. at 15.  The fact that the ALJ did not elaborate on this conclusion does not require reversal, because

7

the record supports her overall conclusion.").

The ALJ's finding that Bradley did not meet or equal a listing is supported by substantial evidence. Specifically, the ALJ cited the opinion of Selbert G. Chernoff, M.D., a medical expert who reviewed the evidence in the record at the time of the administrative hearing. (Tr. 22, 210-17,) Dr. Chernoff testified that Bradley did not meet or equal any listed impairment. (Tr. 213.) In fact, Dr. Chernoff found, based on Bradley's test results, that his HIV was under "good control" and that it was "hard to imagine that he has symptoms from HIV at this point." (Tr. 212.) In addition, the ALJ observed that the only evidence in the record from a specific mental status examination did not indicate the presence of "marked" impairments. (Tr. 25, 157.) Rather, Bradley's mental status on October 14, 2003, was essentially normal except for "mildly" depressed affect and mood. (Tr. 25, 157.) These findings are entirely inconsistent with a finding that Bradley met or equaled the Listing.

Plaintiff displayed symptoms of depression immediately after he found out that he had HIV and during the difficult process of informing family of his condition. (Tr. 131-32, 134, 137, 142). However, situational depression is not disabling. *See Mitchell v. Sullivan*, 907 F.2d 848 (8th Cir. 1990). Further, the record indicates that Plaintiff received very infrequent treatment for depression. After a brief period of counseling in 2002 when he learned he had HIV, Plaintiff had no further mental health treatment until October 2003, almost one year later. (Tr. 131-32, 157.) Subsequently, the record demonstrates only one additional visit in November 2003, over one year before the ALJ's

decision. (Tr. 156.) Bradley correctly states that symptoms from mental illness may wax and wane over time. *See* Pl.'s Br. at 19. However, the absence of treatment for mental impairments over long periods of time strongly suggests that Bradley's symptoms were not as functionally limiting as he alleged. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)(citing *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)).

Furthermore, the ALJ noted Bradley's complaints of "marked" mental impairments were inconsistent with his reported daily activities. (Tr. 25.) Bradley shared a home with his girlfriend, did household chores, and shopped whenever he had funds. (Tr. 75-76, 184.) The Eighth Circuit has noted that activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). In this case, Plaintiff's daily activities do not reflect the "marked" level of impairment required by the Listing.

In support of his argument, Bradley argues that James True, M.D.,[3] and David R. Dembinski, M.D., suggested that he was incapable of gainful employment due to his impairments. (Tr. 121-22.) *See* Pl.'s Br. at 17. As the ALJ observed, both of these opinions were conclusory. (Tr. 26.) An opinion simply that a claimant is disabled is not

---

[3]In his decision, the ALJ misidentified Dr. True, presumably due to the illegibility of his signature. (Tr. 26, 121.) However, the factors articulated for discrediting the opinion found at page 121 of the transcript apply regardless of the ALJ's misidentification. Furthermore, the record indicates that Plaintiff was examined by Dr. True on only two occasions. (Tr. 156-57.) *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) ("Vega's March letter . . . is not entitled to controlling weight as a medical opinion of a treating source. When she filled out the checklist, Vega had only met with Randolph on three prior occasions.")

9

entitled to substantial weight. Further, Dr. Dembinski explicitly considered Plaintiff's age and education in stating that he was "incapable of gainful employment" (Tr. 122). The Eighth Circuit has held that a physician's opinion that a claimant cannot be gainfully employed is not a medical opinion, but is an opinion on the application of the Social Security Act. This task is solely the responsibility of the ALJ. *See Nelson v. Sullivan*, 946 F.2d 1314, 1316 (8th Cir. 1991). The ALJ also observed that the opinions of Dr. True and Dr. Dembinski were unsupported by the medical evidence. (Tr. 26.) As noted above, Bradley's HIV was well controlled soon after he started treatment. Further, although Dr. True indicated that Plaintiff was disabled in part due to depression, this opinion is unsupported by medical evidence. Mental status examination of Plaintiff in October 2003 revealed only "mildly depressed" mood and affect. (Tr. 157.) Plaintiff's presentation, grooming, speech, and eye contact were all essentially normal. (Tr. 157.) He displayed no signs of any psychotic process. (Tr. 157.) Similarly, Dr. True's indication of a global assessment of functioning (GAF) score of 46, indicating serious symptoms such as suicidal ideation or severe obsessional rituals or a serious impairment in social or occupational functioning, is simply inconsistent with his benign examination findings. (Tr. 26, 157.) *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV). Therefore, the ALJ properly afforded little weight to the opinions of Dr. True and Dr. Dembinski.

Furthermore, although Bradley reported subjective symptoms of fatigue and depression, the ALJ discredited his subjective complaints for a variety of reasons

consistent with Eighth Circuit precedent and Socials Security regulations. (Tr. 25.) The ALJ noted that Bradley had a very weak work history. (Tr. 25, 58.) The Eighth Circuit has noted that "a lack of work history may indicate a lack of motivation to work rather than a lack of ability." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)(citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir.1993) (claimant's credibility is lessened by a poor work history)).

In addition, the ALJ observed that, although Bradley complained of severe medication side-effects such as diarrhea, there was little indication that he reported such side-effects to his physicians or that they felt it necessary to adjust his medications. (Tr. 25.) In fact, there is only one treatment note which references complaints of diarrhea at all. (Tr. 125.) *See Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003) ("We also think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention Mr. Depover having side effects from any medication."). Based on Bradley's lack of treatment, the absence of supporting medical evidence, and Bradley's overall lack of credibility, the ALJ properly determined that his subjective complaints did not meet or equal the criteria necessary to be found disabled at step three of the sequential evaluation process.

Finally, there is no doubt that Bradley suffers from a number of severe impairments. *See* Pl.'s Br. at 20. The ALJ found that Bradley had bilateral shoulder impairments, hepatitis C, back pain, depression, and HIV. (Tr. 27.) Further, the ALJ found that Bradley had a substantial reduction of his RFC. (Tr. 28.) The ALJ did not, as

Bradley infers, suggest that he did not suffer from symptoms. However, the Listing requires very specific and severe functional restriction in order to find that an individual is disabled at step three of the sequential evaluation process. The ALJ merely found that the medical evidence did not establish that Bradley's symptoms reached the required level of severity to meet or equal the Listing. (Tr. 23-27.) The ALJ's decision is supported by substantial evidence in the record as a whole.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Bradley's Motion for Summary Judgment [Doc. # 12] is DENIED. The decision of the ALJ is AFFIRMED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 23, 2007
Jefferson City, Missouri